# Authority to Transfer Forfeited Property to the General Services Administration for Potential Sale to a Municipality

The Attorney General has authority under 21 U.S.C. §881(e)(3) to transfer to the General Services Administration real property forfeited to the United States Pursuant to the drug laws. Under 40 U.S.C. §484(k)(2), if GSA determines that the property is needed to carry out neither its own responsibilities nor the responsibilities of any other federal agency, it may assign the property to the Secretary of the Interior upon the Secretary's recommendation that the property be used as a public park. This statute also allows the Secretary to sell the land for public park or recreational purposes to a municipality. If warranted by the public benefit that would accrue from use of the land as a park or recreation area, the sales price might be so heavily discounted as to be normal.

December 19, 1985

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

## I. Introduction and Summary

This memorandum responds to your request for our opinion on the following questions: (1) whether you have authority to transfer certain forfeited real property to the General Services Administration (GSA); and (2) whether, assuming that GSA and the Secretary of the Interior (Secretary) choose to exercise their discretion in certain statutorily authorized ways, the land may be sold at a discounted price to a county in Florida for use as a park.

As we understand the facts underlying this request, on March 16, 1984, agents of the United States Marshals Service (USMS) seized 167 acres of Florida land. The land was liable to forfeiture under 21 U.S.C. § 881(a)(6) because it represented "proceeds traceable to an exchange for a controlled substance." On June 14, 1984, a judicial decree of forfeiture was entered, ordering the USMS to deliver the property to the United States of America "for disposition according to law." *United States* v. *One (1) One Hundred Ninety-Seven Acre Parcel of Property Situation in Alachua County, Florida,* No. GCA-84-0027 (N.D. Fla. June 14, 1984). On August 21, 1984, the United States Attorney for the Northern District of Florida directed the transfer of the property from the USMS to GSA pursuant to the Controlled Substances Act, which permits the Attorney General to transfer forfeited property to GSA "for disposition according to law." 21 U.S.C. § 881(e)(3).[1]

---

[1] GSA, however, appears to have treated this disposition as a request that it sell the property of behalf of the Department of Justice pursuant to 21 U.S.C. § 881(e)(2). At the request of the Department, GSA has not yet publicly advertised the property.

The forfeited land is adjacent to a state park and is considered to be ecologically valuable. Alachua County, Florida has therefore expressed an interest in acquiring the land from the federal government at nominal cost for use as a park. The County, however, is willing to satisfy the liens and local back taxes that burden the land in the amount of approximately $100,000.

We conclude that 21 U.S.C. § 881(e)(3) authorizes the Attorney General to transfer forfeited property to GSA. If GSA determines that the property is needed to carry out neither its own responsibilities nor the responsibilities of any other federal agency, GSA may declare the property surplus and dispose of it under the Federal Property and Administrative Services Act of 1949 (FPASA), 40 U.S.C. §§ 471–544, a statute that vests GSA with considerable discretion over the final disposition of surplus property.

One of FPASA's provisions, *id.* § 484(k)(2), permits GSA to assign to the Secretary land that the latter recommends for use as a public park. If the Secretary does make such a recommendation and if GSA does assign the land to the Secretary, the Secretary has authority under § 484(k)(2)(B) to sell the land to Alachua County at a discounted price in consideration of the public benefits that will accrue to the citizens of the United States through the use of the land as a park.[2]

## II. Analysis

### A. Legal Authority to Classify Land as "Excess Property" Under the Federal Property and Administrative Services Act of 1949

Section 511(e)(3) of the Controlled Substances Act, 21 U.S.C. § 881(e)(3) provides: "Whenever property is forfeited under this subchapter the Attorney General may . . . require that the General Services Administration take custody of the property and remove it for disposition according to law."[3] The plain

---

[2] We have no view, of course, concerning: (1) whether the Secretary should recommend that this Florida land be sold to Alachua County for use as a park; (2) whether GSA should exercise its discretion under § 484(k)(2) to assign the land to the Secretary; or (3) whether the Secretary should exercise his discretion under § 484(k)(2)(B) to determine that the land should be sold to the County at a discounted price reflecting the public benefit derived from use of this land as a park.

[3] Section 881(e) also provides that the Attorney General may:

(1) retain the [forfeited] property for official use or transfer the custody or ownership or any forfeited property to any Federal, State, or local agency pursuant to [19 U.S.C. § 1616];

(2) sell any forfeited property which is not required to be destroyed by law and which is not harmful to the public; [or]

\* \* \*

(4) forward it to the Drug Enforcement Administration for disposition (including delivery for medical or scientific use to any Federal or State agency under the regulations of the Attorney General).

None of these other authorities are available to transfer the land directly to Alachua County at a nominal price. The property may not be transferred directly to a state or local agency under § 881(e)(1) in this instance because no state or local enforcement agency directly participated "in any of the acts which led to the seizure or forfeiture of the property." *See* 19 U.S.C. § 1616(a)(2). The authority under § 881(e)(2) to sell forfeited property clearly carries with it the requirement that the property be sold in an arm's length transaction at a reasonable rather than a below-market price. Section 881(e)(4) is inapplicable by its terms. We therefore believe that § 881(e)(3) provides the only means by which Alachua County may legally receive this land at a discounted price.

meaning of this provision is that the Attorney General may transfer forfeited property to GSA for disposition pursuant to any legal authority applicable to the property.[4]

One such authority is the FPASA, which vests GSA with discretion to dispose of "surplus property" in a variety of ways. 40 U.S.C. § 484. The FPSA defines "surplus property" as "excess property not required for the needs and discharge of the responsibilities of all Federal agencies, as determined by [GSA]." *Id.* § 472(g). "Excess property," in turn, is defined as "any property under the control of any Federal agency which is not required for its needs and the discharge of its responsibilities, as determined by the head thereof." *Id.* § 472(e). Accordingly, a two-step process is required before property may be disposed of as surplus under the FPASA. First, the head of the agency that controls the property must declare it excess with respect to the needs of the agency. GSA then must determine that the property is excess with respect to the needs of other federal agencies.

We conclude that GSA, which presently controls the forfeited land, may designate it as excess property under 40 U.S.C. § 472(e) if it determines in the exercise of its discretion that the property is not required for the needs of GSA or the discharge of its responsibilities. Nothing in the FPASA nor, to our knowledge, in any other statute, prevents forfeited property from being classified as "excess" property, assuming that it otherwise meets the statutory definition of "excess."[5]

GSA, however, in both oral and written communications with the Department, has stated that in its view, forfeited property cannot be classified as excess property for purposes of disposal under the FPASA.[6] The only rationale

---

[4] The legislative history of this provision is wholly consistent with its plain language. *See* H.R. Rep. No. 1444, 91st Cong., 2d Sess. 56 (1970) (stating that the section permits the Attorney General, at his option, to dispose of forfeited property in a variety of ways).

[5] The Comprehensive Crime Control Act of 1984 established a Department of Justice Assets Forfeiture Fund into which "[t]here shall be deposited . . . all amounts from the forfeiture of property under any law enforced or administered by the Department of Justice remaining after the payment of expenses for forfeiture and sale authorized by law." 28 U.S.C. § 524(c). The legislative history of the 1984 Act discusses only two options available to the Attorney General with respect to forfeited property: to retain the property or sell it. *See* H.R. Rep. No. 1030, 98th Cong., 2d Sess. 1940 & n.16 (1984). Therefore, an argument could be constructed from the legislative history and structure of the 1984 Act that Congress understood that the Department of Justice would sell at market value any forfeited property not retained.

The forfeiture provisions of the 1984 Act, however, apply only to property that was in the custody of the Department of Justice on or after October 12, 1984, the effective date of these provision. *See* 28 U.S.C. § 524(c)(7). The forfeited land in Alachua County, however, was transferred to the custody of GSA pursuant to § 881(e)(3) on August 21, 1984, and thus is not covered by these provisions. Moreover, even if the property had been transferred after the effective date of the forfeiture provisions, we would not be inclined to conclude that it could not be transferred under § 881(e)(3). In the 1984 Act, Congress did not explicitly repeal the clear authority under § 881(e)(3) for the Attorney General to transfer the property to GSA for disposition under any applicable legal authority, including authorities such as 40 U.S.C. § 484(k)(2), even if the transfer does not bring the Department market value for the forfeited property. Accordingly, we believe that it is wholly legal for the Attorney General to continue to exercise his authority under § 881(e)(3), particularly in light of the venerable doctrine that repeals by implication are disfavored. *See United States* v. *United Continental Tuna Corp.*, 425 U.S. 164, 168 (1976).

[6] In support of its position, GSA cites the "Agreement Between United States Marshals Service and General Services Administration" (June 24, 1985) and a document entitled "Real Property Forfeitures Questions and
Continued

128

offered by GSA for this analysis is that forfeited property is not acquired for the mission of the Department, but in rather connection with law enforcement, and it therefore cannot be deemed excess property.

An agency is entitled to deference in its interpretation of a statute it administers when the statue is unclear. *See Udall* v. *Tallman,* 380 U.S. 1, 16 (1965). GSA's interpretation of "excess property," however, is at odds with the plain language of the FPASA. The definition of excess property does not focus on the means by which or the purpose for which the property at issue was originally acquired, but instead considers only whether the property is required for the needs and the discharge of responsibilities of an agency. If the forfeited property is not so required, therefore, it may be classified as excess. GSA has not cited, and we have not found, any legislative history of the FPASA that casts doubt on this plain language.[7]

For the foregoing reasons, we conclude that the Attorney General has the statutory authority to transfer the land to GSA pursuant to § 881(e)(3) and that the property may then be classified as "excess property" by GSA.[8]

---

[6] (. . . continued)
Answers." GSA apparently uses the latter document in connection with the training of employees involved in this area. The first two questions and answers read·
> Q. Is seized or forfeited property disposed of under the Federal Property and Administrative Services Act of 1949, as amended (FPASA)?
>
> A. No. Property is seized and forfeited pursuant to the Comprehensive Forfeiture Act of 1984. Certain properties are then disposed of pursuant to our memorandum of understanding with the U.S. Marshals Service.
>
> Q. Is forfeited property excess or surplus?
>
> A. See previous question and answer.

Another one of the questions and answers seems to address specifically the question whether forfeited property can be disposed in a public discount conveyance of the kind contemplated in 40 U.S.C. § 484(k)(2)(B):
> Q. Is forfeited property surplus for the purpose of public discount conveyances?
>
> A. No, it is not surplus Federal real property within the context of 1949 FPASA. Additionally, the USMS Agreement requires that the property will be sold to provide the maximum monetary return to the government.

We believe that the agreement between GSA and the USMS controls only the procedures for disposition of properties that the Department of Justice decides to sell according to 21 U.S.C. § 881(e)(2), and is irrelevant to the disposition of properties transferred by the Department of Justice to GSA pursuant to § 881(e)(3).

[7] The definitions of "excess property" and "surplus property" were contained in the original Act. *See* Pub. L. No. 82–288, § 3, 63 Stat. 377, 378–79 (1949). The only legislative history pertaining to these definitions simply repeated their language. *See* H.R. Rep. No. 670, 81st Cong., 1st Sess. 8 (1949). The definitions have remained unchanged in all subsequent amendments of the statute and have not been the subject of any comment in the legislative history to these subsequent amendments.   ·

[8] We note, however, that the current guidelines concerning seized and forfeited property do not appear to contemplate disposition to GSA under 21 U.S.C. § 881(e)(3). These guidelines provide, in pertinent part:
> [Section 881(e) of 21 U.S.C.] authorizes the Attorney General to dispose of forfeited property by (1) retaining the property for official use; (2) transferring custody or ownership of the property to any Federal, State or local agency pursuant to [19 U.S.C. §1616]; or (3) placing the forfeited cash or proceeds of sale of forfeited property in an appropriation called the Department of Justice Assets Forfeiture Fund . . . . A decision of the Attorney General regarding placing the forfeited property to another agency is not subject to judicial review.

Attorney General's Guidelines on Seized and Forfeited Property, 50 Fed. Reg. 24,052, 24,052 (1985).

When the United States Attorney transferred this property to GSA on August 21, 1984, however, the Department, had not yet promulgated internal guidelines concerning the disposition of forfeited property. We therefore believe, assuming that the United States Attorney was acting as the Attorney General's delegate, that his transfer of property in August 1984 cannot be seen as inconsistent with any guidelines extant at that time.

129

## B. Authority of the Secretary of the Interior to Sell Land to a Municipality at a Discounted Price Under 40 U.S.C. § 484(k)(2)(B)

Once the land is classified as excess property, GSA would have to determine that the property "was not required for the needs and the discharge of responsibilities of all federal agencies" before the property can be classified as "surplus." *See* 30 U.S.C. § 472(g). Once the land has been classified as surplus property, it may be disposed of under 40 U.S.C. § 484. Because a variety of disposal options are available under the section,[9] GSA undertakes an analysis to determine "the estimated best and highest use" of the property. 41 C.F.R. § 101–47.303–1. GSA then notifies certain public agencies, including the Department of the Interior, of the potential availability of the property. *See id.* § 101–47.303–2.

The Secretary of the Interior may then submit an application to GSA, recommending that the land be used as a public park or recreation area. *Id.* § 101–47.308–7. On receipt of such an application, GSA is authorized under 40 U.S.C. § 484(k)(2) to assign the property for use as a park or recreation area. The Secretary, in turn may "sell or lease" the land "for public park or recreational purposes to any State, political subdivision, instrumentality or municipality" under § 484(k)(2)(A).[10] Although the Secretary may not make a gift of the property to Alachua County,[11] he is authorized to sell or lease the land to the County at a discounted price. Section 484(k)(2)(B) provides:

> In fixing the sale or lease value of property to be disposed of under subparagraph (A) of this paragraph, the Secretary of the Interior shall take into consideration any benefit which has accrued or may accrue to the United States from the use of such property by any such State, political subdivision, instrumentality, or municipality.

It is not clear from the language of the statute whether the Secretary is authorized to sell the land at a wholly nominal price. The legislative history of § 484(k)(2)(B) makes clear, however, that Congress intended to authorize the

---

[9] *See, e.g.,* 40 U.S.C. § 484(e) (authorizing public sale of surplus property); *id.* § 484(h) (authorizing transfer to the Department of Agriculture for price support reasons); *id.* § 484(k)(1) (authorizing transfer to the Department of Education for educational purposes).

[10] Section 484(k)(2) provides in part:

> Under such regulations as he may prescribe, the Administration [of General Services] is authorized, his discretion, to assign to the Secretary of the Interior for disposal, such surplus real property, including buildings, fixtures, and equipment situated thereon, as is recommended by the Secretary of the Interior as needed for use as a public park or recreation area.
>
> (A) Subject to the disapproval of the Administrator within thirty days after notice to him by the Secretary of the Interior of a proposed transfer of property for public park of public recreational use, the Secretary of the Interior, through such officers or employees of the Department of the Interior as may designate, may sell or lease such real property, including buildings, fixtures, and equipment situated thereon, for public park or public recreational purposes to any State, political subdivision, instrumentalities thereof, or municipality.

[11] Section 484(k)(2)(A) clearly requires the sale or lease of property to be used as a public park. In contrast, GSA is authorized under the FPASA to donate surplus federal property for certain other purposes. *See, e.g.,* 40 U.S.C. § 484(k)(3) (permitting GSA to donate surplus property to states for use as historic monuments).

130

Secretary to convey land to localities for use as public parks at discounts approaching one-hundred percent. Section 484(k)(2)(B) was added to the FPASA by the Land and Water Conservation Fund Act Amendments of 1970, Pub. L. No. 91–485, § 2, 84 Stat. 1084, 1084–85. At the time the 1970 amendments were enacted, statutory authority already existed to permit a public use discount of fifty percent on surplus land sold for park and recreation purposes. The House Report accompanying the 1970 amendments states that this discount was inadequate. *See* H.R. Rep. No. 1225, 91st Cong., 2d Sess. 5 (1970). The House Report notes that the "intangible value which attaches to public outdoor recreation . . . cannot be measured in monetary terms or comparative appraisals." *Id.* at 6. It also quotes approvingly the recommendation of the Outdoor Recreation Resources Review Committee: "Surplus Federal Land suitable for outdoor recreation purposes should be made available to State and local governments at no cost, with appropriate reservation clauses." *Id.*

Thus, although the language of § 484(k)(2)(B) requires that the Secretary sell the land for some price and does not authorize an outright donation, it is clear from the legislative history of the provision that Congress contemplated that the price might be so heavily discounted as to be nominal if warranted by the public benefit that would accrue form use of the land as a park or recreation area.[12]

## Conclusion

We conclude that the Attorney General has authority to direct GSA to take custody of the forfeited land in Florida under 21 U.S.C. § 881(e)(3). We also believe that GSA is authorized to dispose of the property as surplus and assign it to the Secretary of the Interior on the latter's recommendation that the land be used as a public park. Finally, the Secretary has authority under 40 U.S.C. § 484(k)(2)(B) to sell the land at a discounted price to Alachua County, Florida for use as a public park.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[12]As we understand the facts of this case, the requirement that the Secretary receive at least a nominal price for land sold pursuant to § 484(k)(2) will be satisfied by the County's discharge of the liens and back taxes on the land. There does not seem to be any legal obstacle to accepting the amount necessary to satisfy these liabilities as the purchase price of the land. Our opinion that such a transaction would satisfy the requirements of § 484(k)(2)(B), of course, does not constitute a recommendation that the Secretary pursue this course of action.